# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AON PLC, AON CORPORATION, and AON FAC, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALLIANT INSURANCE SERVICES, INC., LOUIS AMBRIANO, NICHOLAS AMBRIANO, JUAN APONTE, OWEN BUSCAGLIA, ANDREW MASSE, RACHEL MCALLISTER, CHRISTOPHER MEDLICOTT, MICHAEL O'BRIEN, and ROBERT OSBORNE, <br><br> Defendants. | Case No. 23-cv-03044 <br><br> Hon. John J. Tharp, Jr. |

## **DECLARATION OF ANDREW MASSE**

I, ANDREW MASSE, declare pursuant to 28 U.S.C. § 1746 as follows:

1.  I am named as a defendant in this action. I am located within the United States and am a resident of Illinois, am over the age of 18 years and am fully familiar with the facts set forth herein. If called to testify as a witness in this action, I could and would testify to these same facts.

2.  I am a Senior Vice President of Alliant Re, the reinsurance division of Alliant Insurance Services, Inc. I resigned my employment at Aon in the late afternoon of April 19, 2023. Prior to working at Aon, where I spent approximately five and a half years, I worked for approximately 25 years at Guy Carpenter, the reinsurance arm of Marsh & McLennan.

3.  In the Complaint, Aon implies that I improperly accessed or improperly possess Aon confidential information and materials. This is not true. For example, Aon states in paragraph 79(a) that "[b]etween April 18 and April 19, Masse accessed approximately 33 folders and files

from Aon's computer network or his Aon assigned computer system, including 26 folders and files on the last day of his Aon employment (April 19)." Aon seeks to imply that I accessed folders and files for some improper purpose. That is false. I worked diligently for Aon up until the moment of my resignation. Accessing work folders and files was necessary to conduct that work, which involved the review and filing of email communications and electronic documents from carriers and reinsurers. Accessing folders and files and placing these documents into electronic folders and files was an everyday occurrence. In my work, I routinely accessed these folders and files in submitting, quoting or binding reinsurance business. I did not access anything for competitive use at Alliant.

4. Aon also complains that "[i]n addition, five days before Masse resigned, on April 14, 2023, Masse sent from his Aon email to his personal three email messages that contained the image of an excel spreadsheet. The emails had the subject lines: 'May renewals,' 'June 23 renewals,' and 'July 23 renewals.' The information in the emails included client names (including cedents and underlying insureds), renewal dates, and financial information – all information that Masse could use at Alliant to target clients with impending renewals."

5. First, at Alliant, I have not "targeted" or worked on any Aon submissions or renewal business that I previously worked on at Aon. Aon is trying to shut me out of the reinsurance marketplace completely; that is, to stop me from working on entirely new submissions from major insurance carriers that are not Aon renewal business that I ever worked on and are not business that was ever submitted to Aon that I ever worked on. This is an untenable, and unfair, position to take. It is also hypocritical. In my experience, it is inconsistent with how Aon behaves when it hires reinsurance producers from other brokers.

6. I know this because I joined Aon Re as a producer in 2017 after a long career at Guy Carpenter, another major reinsurance broker. I had post-employment restrictive covenants at Guy Carpenter prohibiting my solicitation, acceptance or servicing of client accounts that I had produced or serviced at Guy Carpenter. With full knowledge of those obligations, Aon Re instructed me – encouraged me, actually – to accept and work on any *new* business from the same cede sources (usually, insurance carriers and their underwriters) that I had worked with at Guy Carpenter. It was only *renewal* business that I had at Guy Carpenter that was shifted to other reinsurance brokers and professionals to work on. Of course, Aon Re did not turn down the renewal business either, it only moved it to another broker at Aon Re during the length of my covenant. It is simply and truly the case that reinsurance brokers like me would be essentially out of the business altogether if they are made not to work on new business from major insurance carriers.

7. Second, what I sent to myself was in connection with performing my work for Aon. I would send to myself (personal email) a listing of my renewal accounts, typically for the upcoming three months. This practice occurred roughly every three months for the past three years. Since COVID, work was increasingly remote (entirely until late summer 2021) and I had no practical way of printing these account spreadsheets other than sending them to my home email. I used these spreadsheets to keep track of my in-force accounts which sometimes totaled more than 60 in a given month. For each account listed on the spreadsheet, I recorded R/Q/B which stood for R=received submission, Q=account quoted, B=account bound (or some other notation if the account died or didn't renew). I did this near the end of my Aon employment to keep track of May/June/July accounts – of which some submissions were starting to arrive. This was my standard operating procedure for over three years. As stated, I worked diligently for Aon

throughout my employment until the time of my resignation. This included using the same work practices that I had undertaken for years.

8. As has already been explained to Aon, and previously sworn in a written declaration by me, the emails in my personal email account related to my Aon work, including those described in Aon's Complaint, were removed from my Gmail account on April 20th by an independent forensics consultant arranged by my counsel. Attached to this declaration as **Exhibit A** is a true copy of my April 24, 2023 declaration to that effect, which I understand was delivered to Aon's counsel on April 24, 2023. I have not retained any copies of the Aon work-related emails removed from my Gmail account, or the small stack of hard copy Aon-work related documents that I had in my possession at my home office, which I returned to Aon by overnight mail on April 20th. I have not shared copies of the Aon work-related emails or hard copy documents described above with anyone, including Alliant.

9. I also sent back to Aon my Aon laptop, Aon iPhone, company credit card and identification badges on April 20th. Having returned all Aon property and documents in my possession, and having undergone forensic removal of any Aon electronic materials in my possession, to my knowledge I have no Aon confidential, proprietary or trade secret materials in my possession. Further, I have not improperly taken, used or disclosed any such materials or information.

10. Finally, I have not solicited Aon employees to work at Alliant.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 23, 2023.

_____
ANDREW MASSE