**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AON PLC, AON CORPORATION, and AON FAC, INC., <br><br> Plaintiffs, <br><br> v. <br><br> ALLIANT INSURANCE SERVICES, INC., LOUIS AMBRIANO, NICHOLAS AMBRIANO, JUAN APONTE, OWEN BUSCAGLIA, ANDREW MASSE, RACHEL MCALLISTER, CHRISTOPHER MEDLICOTT, MICHAEL O'BRIEN, and ROBERT OSBORNE, <br><br> Defendants. | Case No. 23-cv-03044 <br><br> Hon. John J. Tharp, Jr. |

## **DECLARATION OF CHRIS MEDLICOTT**

I, CHRIS MEDLICOTT, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am a defendant in this action.[1] I am located within the United States and am a resident of New Jersey, am over the age of 18 years and am fully familiar with the facts set forth herein. If called to testify as a witness in this action, I could and would testify to these same facts.

2. I am a Senior Vice President of Alliant Re, the reinsurance division of Alliant Insurance Services, Inc. I resigned my employment at Aon in the early afternoon of April 19, 2023. Before working at Aon, where I spent about nine and a half years, I worked as a reinsurance broker for other large reinsurance brokerages, including JLT Re (from 2006 until 2013) and Gallagher Re

---

[1] I am named in this action as "Christopher" Medlicott. However, my name is not Christopher. My full name is Charles Chris Medlicott, but I commonly go by Chris.

(from 1993 until 2006). Prior to that, I worked as an underwriter at large insurances carries, AIG and Fireman's Fund Insurance Company.

3. I did not solicit other Aon employees to join Alliant, nor did Alliant ask me to do so. I had interest in talking to Alliant when they first reached out to me because I was unhappy with my compensation at Aon. I also separately met with a recruiter for the same reason.

4. In Paragraph 72 of the Complaint, Aon claims that in late March 2023, I had "suspicious" LinkedIn communications with Alison (Ali) Cusack, a junior staff member in Aon Re's New York office. In fact, I received a LinkedIn notice that Ali Cusack had an Aon work anniversary, so I sent her the following LinkedIn message in response: "Congrats on your work anniversary! You continue to be a Rock Star. Aon is lucky to have you!" I do not think there was anything suspicious about it. I did not solicit Ali Cusack to move to Alliant (nor did Ali Cusack solicit me). Since Ali Cusack's father, Michael Cusack, works at Alliant, he would no doubt be able to do that without me.

5. In Paragraph 74 of the Complaint, Aon insinuates that I accessed Aon files while I worked there for some untoward purpose. This is false. Specifically, Aon claims "in the three days prior to his resignation, Medlicott accessed approximately 63 folders and files from Aon's computer network or his Aon assigned computer system. Some of these files included: "May 2023 Renewal Report – Chris original.xlsx" (accessed on April 19, about an hour and a half before he resigned); "2023 Weekly Forecast New York Casualty Facultative Budget (Draft).xlsx" (accessed on April 17); and "2023 New York Budget Final.xlsx" (accessed on April 17)."

6. At Aon, I accessed, opened and updated these folders and files in the normal discharge of my work responsibilities for Aon, including any such access on April 17th or 19th. For example, I updated the renewal report before I left with which accounts were bound, quoted,

requested, etc. I left a list of the May 1 renewals that needed attention on my desk at Aon upon my departure so that the accounts could be serviced properly. I also put in a final expense report. I dutifully worked for Aon right up until the time of my resignation. The alternative to accessing these files would have been to shirk my work responsibilities.

7. When I resigned on April 19, I left my Aon laptop in my office at Aon. The only things from the office I took with me were personal effects: a few family pictures, two model plastic cars, a rock that says "You Rock! Happy Father's Day," a mug with family photos on it and a pen from the LEGO movie *President Business*. I have done a thorough search and I have found no Aon work materials in my possession. Aon also claims in Paragraph 74(a) that, on March 21, I "attempted to access Google Drive twice" on my Aon computer. While I do not recall trying to access Google Drive on March 21, I can state that I did not save any Aon work files to Google Drive. Aon further complains that, upon resigning, I put an automatic reply on my Aon email account that included my personal cell number. I thought it would be irresponsible not to put on an automatic out of office reply, as accounts and reinsurers would otherwise assume routine communications were being handled by me. My Aon email signature block had my personal cell phone in it, anyway, so the cell number would appear regardless of whether it was in my out of office message or not. I have not improperly taken, used, or disclosed any Aon confidential information, trade secrets or proprietary information.

8. In Paragraphs 13 and 116 of the Complaint, Aon claims that I did something wrong in traveling to Bermuda after my departure. I had a trip planned to visit Bermuda relationships and walk around folks from Hannover Re from Germany, one of the world's largest reinsurers, to meet with cede companies who planned to be in Bermuda at the time. Once at Alliant, I contacted Hannover Re and they advised no one from Aon had reached out to them and they were still

planning on visiting the island. I contacted my relationships on the island and most had cancelled their meeting with Aon. I offered to walk Hannover Re around the island if Aon was not going to do so. As it turned out, Aon did contact Hannover Re later and advised the meetings were still on. To my knowledge, Hannover Re went to most of the meetings with Aon. Despite Aon's claims, I did not try to cancel Hannover Re's meetings with Aon.

9. Aon is misleading in its statements about my activities after resigning from Aon. At Alliant, I have not solicited or worked on business that I worked on at Aon. If Aon bound the business, or it was Aon renewal business, I have not worked on it or tried to solicit it.

10. In Paragraph 115 of the Complaint, Aon states "on April 20, just one (1) day after he resigned from Aon to join Alliant, Medlicott immediately began soliciting reinsurance coverage for Aon cedent-client Client Q, with an effective date of May 1. Medlicott received confidential information concerning Client Q through (among other ways) his receipt of GRiDS reports, including most recently as April 13, 2023 (a mere seven days prior)." I am not sure who "Client Q" is or what Aon is driving at here. Some relationships did ask to move Aon business to me, and I told them to leave it at Aon. Another relationship asked me to help and I told him who to call at Aon to get help. I didn't solicit or work on any of my accounts with respect to business that Aon had submitted, or that was an Aon renewal.

11. In Paragraph 137 of the Complaint, Aon also claims "[o]n May 3, Aon learned that Client P 'has elected to work with Alliant going forward' on a piece of business. Medlicott started working with this client on the same business before he left Aon." Again, I cannot be sure what Aon means by "Client D." However, if I worked on something at Aon I have not worked on it at Alliant, and I did not solicit that business, either.

12. In Paragraph 130 of the Complaint, Aon further claims: "[a]lso on May 3, Aon learned that Medlicott (on behalf of Alliant) is seeking reinsurance quotes for Aon client, Client T. This was a client that Medlicott learned information about at Aon. On his expense report, for example, he even expensed the following to Aon in/about May 2022: "drinks at hotel discuss [Client T] FAC deal for [Client M]." Again, I am not sure what account Aon is speaking of. I have not worked on any accounts at Alliant that Aon had bound. It may be that Aon is misleadingly conflating proposed business from other cedents. For example, if business is proposed from Cede A on XYZ Company, that does not mean Cede A controls all XYZ Company business sent in from Cede B or Cede C. New business for XYZ Company could be sent in from Cede B or Cede C, or other carriers.

13. In this case, Aon is certainly not preaching what it practices. In my experience at Aon Re, producers hired from other brokerage firms with post-employment restrictive covenants are encouraged by Aon Re to solicit, accept and work on any new business from cedents they worked with at their prior employers, and are instructed to send any old or renewal business that they worked on to other reinsurance brokers at Aon. When I was hired at Aon Re from JLT Re, I was instructed by Aon Re to actively seek business from carrier-cedents I worked with at JLT Re during my restricted period. When yet another JLT Re producer was hired at Aon Re, I was instructed by Aon Re to work on the renewal business of that other producer, and the producer was permitted by Aon Re to work on any new business from the carrier-cedents he worked with during his restrictive covenant period. Still another producer hire from Guy Carpenter I am aware of was given the same instructions by Aon Re.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on May 23, 2023.

_____
CHRIS MEDLICOTT